365 P.2d 213

**UTAH STATE LAND BOARD,**
Plaintiff and Appellant,

v.

**UTAH STATE FINANCE COMMISSION,**
Defendant and Respondent.

No. 9354.

Supreme Court of Utah.

Oct. 5, 1961.

Franklin J. Allen, Salt Lake City, for appellant.

Walter L. Budge, Atty. Gen., Raymond W. Gee, Asst. Atty. Gen., for respondent.

A. M. Ferro, Amicus Curiae, Salt Lake City, amicus curiae.

JEPPSON, District Judge.

In this action the plaintiff desired to purchase securities for investment purposes, under the provision of 65-1-65, Utah Code Annotated for 1953, as amended, but the defendant refused to issue checks for such purchases on the ground that the statute authorizing the purchase of corporate securities was unconstitutional.

An action was subsequently commenced under the Utah Declaratory Judgment Act, in the Third Judicial District Court, wherein the District Court held that the said statute, 65-1-65, violated Section 31, Article 6 of the Utah Constitution.

Section 31, Article 6 of the Utah Constitution reads:

"The Legislature shall not authorize the State, or any county, city, town, township, district or other political subdivision of the State to lend its credit or subscribe to stock or bonds in aid of any railroad, telegraph or other private individual or corporate enterprise or undertaking."

When Section 31 of Article 6 of the Constitution was adopted, in the Constitutional Convention, there were numerous arguments concerning it.[1] Whenever there is uncertainty in regard to the meaning and application of a constitutional provision, it is desirable and permissible to look to the background and circumstances out of which it arose to determine its correct application.[2]

In the Constitutional Convention Mr. David Evans favored a greater restriction, but stated he would vote for Section 31 if his provision failed. He stated:

"* * * If our constitution be left so open that private enterprises and corporations can organize and apply to the State through its officials and representatives for aid, that a greater abuse of power will naturally follow."[3]

Mr. Evans also stated:

"What is loaning the credit of a state or a county or a municipality? In short it means that if any corporation or enterprise desiring to start a business, and

1. I Proceedings of the Constitutional Convention of Utah, beginning 951.
2. Bateman v. Board of Examiners, 7 Utah 2d, 221; 322 P.2d, 381; Almond v. Day, 197 Va. 782, 91 S.E.2d 660.

3. I Proceeding of the Constitutional Convention of Utah, 952.

for the purpose of aiding it, the State endorses it, or rather guarantees the bond or the paper of such individual or corporation * * *." [4]

This is not a question of bounties at all. It is similar to New York's provision, "Neither the State nor money of the State shall be given or loaned to or in aid of any association, corporation or private undertaking." [5]

In the Constitutional Convention, concerning the proposed Section 31 of Article 6 of the Constitution, Mr. Charles S. Varian said:

"* * * The purpose of my section is to prohibit the lending of the credit in any way for the furtherance of such enterprises as are indicated. It is not intended to and does not directly or indirectly disturb the general power of the Legislature concerning general legislation of the State." [6]

It appears from the argument and provisions adopted that the advisability of investing in stocks and bonds was considered, and that the Convention only had as its object the prevention of the use of State funds or credit "in aid of any railroad, telegraph or other private individual or corporate enterprise or undertaking."

The provision "in aid of any railroad" etc., was expressly intended to prevent the use of the finances of the State to give support to private interests or enterprises, but unless the element of aiding such an enterprise is present, there is no indication in the language of the Constitutional provision itself, nor in the background of its origin, that the State or its agency should be prohibited from the purchase of well-established corporate securities in the interest of prudent handling of the funds defendant is required to manage. The activating purpose makes the difference. [7]

When the underlying purpose is to invest for the benefit of the State or a political subdivision thereof, there is no lending of credit or expenditure of funds "in aid of" such enterprise or undertaking.

The question of whether a purchase of corporate bonds offended the "credit clause" was squarely before the Virginia Court. [8] It held a statute authorizing the purchase of corporate securities was constitutional and did not offend the credit clause of the Virginia Constitution. In particular the court said, beginning at page 667 of 91 S.E. 2d:

"Use of the State's funds for purchase of securities for the State's bene-

4. I Proceeding of the Constitutional Convention of Utah, 953.
5. I Proceeding of the Constitutional Convention of Utah, 954.
6. I Proceeding of the Constitutional Convention of Utah, 951.
7. Almond v. Day, 197 Va. 419, 91 S.E.2d 660.
8. Almond v. Day, 197 Va. 419, 91 S.E.2d 660.

fit is not an extension of 'credit' which poses any threat to the financial security or welfare of the State. Extending its credit to aid and promote private enterprise was the evil from which the State had suffered financially. The potential danger incurred in lending credit to foster and promote the interests of those who had no rightful claim, in justice or in morals, to the State's help or relief was the evil to be arrested. When the underlying and activating purpose of the transaction and the financial obligation incurred are for the State's benefit, there is no lending of its credit though it may have expended its funds or incurred an obligation that benefits another. Merely because the State incurs an indebtedness or expends its funds for its benefit and others may incidentally profit thereby does not bring the transaction within the letter or the spirit of the 'credit clause' prohibition."

We hold that 65–1–65 Utah Code Annotated 1953, as amended, is constitutional. The judgment of the lower court is reversed.

WADE, C. J., and McDONOUGH and CROCKETT, JJ., concur.

CALLISTER, J., does not participate in this opinion.

HENRIOD, J., did not participate.